**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**     **Plaintiff,**     v.   **NATHAN BENHOFF,**     **Defendant.** | **Case No. 10 CR 205**   **Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

On December 22, 2009, the Defendant, Nathan Benhoff (the "Defendant" or "Benhoff") confessed to possessing, receiving, and distributing images of child pornography. He was subsequently indicted on four counts of distributing child pornography and two counts of possessing child pornography. He now moves to suppress his confession based on alleged violations of the rights granted under *Miranda v. Arizona*, 384 U.S. 436 (1966).

During the Suppression Hearing the Court heard from the Defendant, the Defendant's roommate, a neighbor of the Defendant, and four FBI agents. While there were some factual disputes, the basic underlying facts were not in dispute.

On December 22, 2009 at approximately 6:06 a.m., eight FBI agents served a search warrant on Defendant and his roommate at their residence, a five-room apartment located on the second floor

of 2263 North Broadway, in Chicago, Illinois. Prior to the execution of the search warrant, another agent while investigating child pornography downloaded files of child pornography from someone with an IP address linked to the Defendant's residence.

Special Agent Wesley Tagtmeyer ("Tagtmeyer") performed the knock-and-announce duties and the Defendant opened the door dressed in his sleeping attire, boxer shorts and a tee shirt. Tagtmeyer made clear that the FBI agents were there to execute a search warrant. All of the agents were wearing Kevlar vests that were marked "FBI Agent," were armed and had their weapons displayed. The Defendant and his roommate were told to sit on couches in the living room of the apartment while the agents performed a protective sweep. During the sweep, the agents still had their weapons displayed. After the sweep was completed, the agents holstered their weapons and Special Agent Linda Engstrom ("Engstrom") asked Benhoff to accompany her and Special Agent Shannon McDaniel ("McDaniel") to the kitchen to be interviewed. Benhoff appeared to go willingly although an agent might have touched Benhoff in an effort to direct him where to go. The agents contend that Benhoff was told by Engstrom that he was not under arrest, was free to leave and did not have to talk to her. Benhoff, however, agreed to speak to them. The interview began at about 6:20 a.m. The only ones present were Engstrom, McDaniel and Benhoff. At the beginning of the interview, Engstrom explained

that they were there to execute a search warrant. She also asked him if he needed to call into work, but Benhoff said he did not have to work that day. She then asked questions about internet access and computers in the home and other general background questions about Benhoff himself. She then asked him if he used any file-sharing networks. At this point Benhoff began to cry and stated that he thought that was the reason why the FBI was there. The agents at that point had not yet brought up the subject of child pornography. Benhoff volunteered that, although the computer was owned by his roommate, the child pornography was his responsibility and the roommate had no knowledge of its existence. At one point Benhoff asked if he needed an attorney and was told that the agents could not advise him on that point. Later during the interview, McDaniel asked Benhoff for consent to assume his on-line identity for investigative purposes. He gave consent and signed the consent form, listing numerous account names and their passwords. He also wrote out a statement in his own handwriting, explaining how he had first encountered child pornography and how the exposure led to an addiction. He also said that it was strictly a fantasy thing and that he had no thoughts about having actual contact with children. The interview lasted approximately one hour. At the end of the interview Benhoff asked if he could travel to Wisconsin to visit his family for Christmas. He was told that he could. Benhoff was never handcuffed or physically

restrained. At the conclusion of the interview all of the agents left the residence. Benhoff was not arrested until later.

Benhoff testified that he was guided to the kitchen by a male agent where he was told to sit in the presence of Engstrom and McDaniel. He denies that he was told that he was free to leave. He did not, however, claim that he was placed under arrest. He did say that the two female agents were "fairly civil." He claims that he told them that he felt that he should have an attorney, but that Engstrom told him that he things would go better for him if he cooperated. He acknowledges that he was forthright but was crying and emotional. He acknowledges giving the written statement and signing the consent but claims to have been told that a judge would look favorably on it.

Under *Miranda*, the Supreme Court set forth rules of police procedure applicable to custodial interrogation. These procedures require that a defendant be given a full and effective warning of his rights at the outset of the interrogation process. *Miranda*, 384 U.S. at 444. However, the requirement is not triggered unless a custodial relationship is established between the accused and the government. As was explained in *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977), a mere "coercive environment" does not establish a custodial relationship. "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law

enforcement system which may ultimately cause the suspect to be charged with a crime." It is not enough that the questioned person is suspected of committing a crime. They "are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Id.*

Based on the evidence adduced at the hearing was Benhoff in custody when he made his incriminating statements? The Court is to use the "totality of circumstances" test to determine the answer to this question. *United States v. Wyatt*, 179 F.3d 532, 535 (7th Cir. 1999). Here there is no question that the agents made a show of force when they made their entrance into the apartment residence and conducted the protective sweep. But that showing was over after a few minutes' time before the agents concluded that there was no danger present. While Benhoff was directed from the living room where he had been sitting on the couch to the kitchen where he was asked to speak with Engstrom and McDaniel, he acknowledges that no force was used. He also acknowledges that the agents were polite to him and that he was not handcuffed or physically restrained in any way. He gave a written statement and executed a consent to assume his online identity. He was not arrested and he was told that he could travel out of state if he so desired. He disputes that he was told he was not under arrest and could leave at any time. However it is clear from the evidence that he was not under any coercion when he made the incriminating statements. When

he realized why the agents were serving a search warrant, he became emotional and started crying.  It is obvious that he was not thinking about incriminating himself but was instead intent on impressing upon the agents that his roommate was not implicated in the child pornography and responsibility for the pornographic material was his alone.  He also wanted to make clear to the agents that he was not guilty of any actual child physical abuse.  In other words the Court believes that Benhoff made the statements that he did, not due to any coercion, but rather because of his concern over the welfare of his roommate; to minimize his own criminal liability; and because of his grief and embarrassment over his activities.  His written statement is completely consistent with these findings.

The Court therefore finds that the interrogation conducted by Agents Engstrom and McDaniel was not custodial and accordingly Benhoff was not entitled to be read the *Miranda* warnings.  The Motion to Suppress is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

**DATE:**　　　7/21/2011